[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO OPEN JUDGMENT
The defendant Nancy L. Guite filed this motion on July 11, 1997 to open the judgment of the trial court, Rittenband, J., ordering strict foreclosure of property formerly owned by this defendant, which judgment was rendered on February 19, 1997.
The underlying judgment lien which is being foreclosed results from a judgment which was rendered by this court on December 21, 1979, lien filed January 4, 1980, which lien relates back to an attachment which was filed on the land records in the town of Coventry on November 18, 1977.
On April 6, 1978, after the commencement of the suit this defendant transferred this property by quitclaim deed to the defendant Paula M. Twichell, who is apparently her daughter and the brother of the plaintiff Paul Twichell. Paula then transferred her interest, by quitclaim deed to herself and her then husband Michael T. Peters. Subsequent to the commencement of this foreclosure action, and unknown to this plaintiff, Paula M. Peters and Michael Peters transferred the property to Charles Guite, Jr. Although not specifically alleged, Charles Guite, Jr. is apparently related to the defendant Nancy Guite, and to Charles B. Guite, Sr. who was a co-defendant in the 1979 action. The court notes that a senior (Sr.) and a junior (Jr.) are usually father and son.
The memorandum of decision of this court, Francis R. Quinn, Judge, dated December 21, 1979 states: "The Plaintiff testified as to his injury and the court observed the horribly disfigured right arm of the Plaintiff. After observing how the Plaintiff is unable to use the arm, the court concludes that it is totally disabled." Medical bills were found to be $20,024.51. The court awarded damages in the sum of $45,000 plus costs.
It is alleged, in the plaintiff's memorandum of law of September 12, 1997 filed in opposition to this motion that these injuries were caused when the defendant Nancy Guite intentionally shot the plaintiff with a shotgun. The defendant does not contend, nor is it contended in any of the documents filed in CT Page 11358 connection with this motion that the plaintiff was not shot by a shotgun, that she did not do the shooting, nor that the amount of damages assessed by Judge Quinn was arbitrary, unreasonable or in abuse of the court's discretion.
The contention of the defendant is that because the judgment was entered upon default of the defendant to appear, and because it is claimed that the defendant was mentally incompetent to defend herself in that action, this court should open up that judgment entered eighteen years ago, as that judgment forms the basis for this foreclosure action. The defendant claims that the plaintiff knew that the defendant was incompetent and therefore should not have proceeded to judgment against her.
The defendant cites Billington v. Billington,23 Conn. App. 45, 47 (1990), setting the criteria, for the basis for a court setting aside a judgment on the grounds of fraud:
(1) no unreasonable delay after discovering the fraud
(2) diligence in attempting to discover the fraud
(3) clear proof of fraud
(4) there is a substantial likelihood that the result of a new trial will be different.
Applied to these circumstances there is no indication that anyone has ever sought to have a conservator appointed for the defendant. There is no medical diagnosis advanced to this court to support a contention of mental incompetence. The mere fact that a person may require assistance with daily living skills, or may even have emotional problems, or may throw away legal papers, does not lead to a conclusion of mental incompetence. The fact that a person may shoot someone with a shotgun does not lead to an inference or a conclusion of mental incompetence. The defendant does not proffer a position that her having shot the plaintiff with a shotgun was not at the very least negligence.
The court notes that the defendant certainly had enough presence of mind, enough capacity, to deed away the property to her daughter on April 6, 1979, less than five months after the plaintiff commenced the underlying suit. One would be hard pressed to conclude that this was a mere coincidence, unrelated to the commencement of suit. Furthermore, the execution of a deed CT Page 11359 is required to be "(4) attested to by two witnesses with their own hands and (3) acknowledged by the grantor . . . to be his free act and deed." General Statutes § 47-5. The deeding away of real estate is an act of grave significance for any person. The very purpose of acknowledgments is to guard against mentally incompetent persons acting under the disability of mental incompetency. This court credits both the integrity and the presumed diligence of persons who have been entrusted with the serious obligation attendant to the execution of acknowledgments. The defendant proffers no explanation as to how a person who has the mental capacity to freely grant away her property by deed would be totally unaware of or appreciative of the fact that she has been sued by the service of legal process.
Additionally the plaintiff attaches to his brief in opposition a letter from the clerk of this court, dated November 29, 1977 referring to a letter sent by the defendant to the clerk of the court. The letter of the clerk suggests to the defendant that she consult with an attorney. Also attached to the plaintiff's brief, from the file of Atty. Shapera, the plaintiff's then counsel, are notes reflecting a telephone call from Attorney Joel Rottner on January 9, 1978, a note that he would "give Rottner 3 weeks, Feb. 1, call him before claiming it", and a letter to Atty. Joel Rottner stating ". . . I am notifying you that I have re-claimed my motion for default against Mr. Mrs. Guite." This letter bears the date March 6, 1978. Also attached to the brief is a letter from Nancy L. Guite to Attorney Shapera, dated March 19, 1978, informing him that "We were at the Court house on the appointed day." The letter does not purport to claim any defense to the tortious conduct, but rather refers to and acknowledges her understanding of the prospect that "it is quite possible we could lose the family property."
Any contention that the defendant did not understand the nature of the claim, or the prospect of a Judgment or the consequence thereof concerning her then property, or the advisability of obtaining counsel is totally without merit.
The defendant points to no authority for a proposition that, at civil law, a person who may labor under some mental lack of capacity is not responsible for injury to persons or property caused by that person's acts, whether it be an intentional act or the failure to meet the objective standard of reasonable care which constitutes, at law, negligence. The court must presume CT Page 11360 that shooting someone with a shotgun properly forms the basis for the court's tort judgment of December 21, 1979.
Any question concerning whether a mentally unstable person is responsible in damages for injury to others is dealt with clearly and specifically by the Supreme Court in the matter of Polmatierv. Russ, 206 Conn. 229 (1988). Mental illness is not a legal defense to the tortious infliction of injury upon another person in a civil action brought by the injured party.
The defendant appears to further contend that the plaintiff concealed from the court the question of the defendant's emotional or mental instability when the plaintiff brought the civil action in November, 1977. However, in contradiction of the defendant's position taken in her brief for this motion, the defendant's counsel attaches to defendant's brief a copy of the 1977 complaint, the second count of which alleges that the co-defendant Charles B. Guite "was aware of the emotional and mental instability of the defendant Nancy L. Guite and therefore, as owner, should not have allowed her to use the shotgun. This proposition was placed before the then trial court squarely and directly by the plaintiff s complaint. Furthermore, the plaintiff attaches to his brief a copy of the affidavit which he submitted to the court dated November 1, 1997 making reference to the defendant's "mental instability," which affidavit formed the basis for Judge David Shea granting the attachment on November 18, 1977. The plaintiff did nothing to conceal the defendant's mental instability from either Judge Shea or Judge Quinn as concerns the 1977-1979 proceedings. Quite to the contrary the court record itself belies the defendant's contention any contention of the defendant to the effect that the plaintiff was thereafter obliged to move or to see to the appointment of a guardian for the defendant is without support, there being no authority for such a proposition. To the extent that the defendant's motion appears to claim that suit cannot be commenced against or prosecuted against a person suffering from mental or emotional instability such a claim is without merit. Polmatier v.Russ, supra.
As to that judgment, the court concludes that nothing presented to this court indicates that "(4) there is a substantial likelihood that the result of a new trial will be different." Billington v. Billington, supra, p. 47. The Defendant's circumstances do not satisfy any of the four criteria of Billington v. Billington, supra. CT Page 11361
 II
As to the foreclosure judgment the defendant asserts two grounds for the court to open that judgment.
First, that the defendant, because of mental incompetence, was unaware that the process served upon her was a foreclosure action which would have legal consequences. Even if one assumed that to be correct, yet the defendant proffers no argument that the consequences would have been different had she appeared. As aforesaid, she would not be entitled to have the judgment lien
set aside or altered. The original debt found by Judge Quinn, in 1979 was in the amount of $45,000, which is in itself in excess of the 1997 value of the property, $40,000. The debt, with interest, as of the foreclosure date, was found to be $119,258.38. There is no premise advanced by the defendant that she would have redeemed the property, had any intention of redeeming, or has the financial ability to redeem.
If by redeeming it may be said that she would become the assignee of the plaintiff's lien, she would have paid $119,258 for the right to a lien on a property which has a total market value of $40,000, whose record title or equity would be that of Charles B. Guite, Jr. It is impossible to conceive that anyone would do that.
The defendant further asserts that she was not given notice that a motion for default for failure to appear was filed against her in this case. The record reflects that the motion was filed in court in August 1996 and is certified by the plaintiff's attorney as having been mailed to her on that date. Practice Book § 352(b) provides for such service upon a non appearing party, which includes service by mail, making reference to Practice Book § 123 which allows for such service upon non-appearing parties.
The contention of the defendant that service of the motion must be by certified mail is without merit. The defendant further appears to contend that because the military affidavit was not filed in court until after the motion for default was filed that this in some fashion precludes the entry of default. Practice Book § 353 contains no such requirement. The filing of the affidavit need only take place prior to the entry of judgment. Default was property entered against this defendant in the CT Page 11362 foreclosure action.
The further reason given by the defendant to set aside the foreclosure judgment is that subsequent to the commencement of the foreclosure action filed February 14, 1996, the defendant' s daughter and the daughter's husband transferred the property by quit claim deed to Charles B. Guite, Jr. on May 16, 1996. It is not contended by the defendant that the plaintiff or his counsel had any knowledge of this transfer.
The defendant contends that the court lacks subject matter jurisdiction by virtue of "failure to cite in an indispensable party".
General Statutes § 49-30 deals precisely with these circumstances. Such an "omission", whether it be caused by a plaintiff's inadvertence, or by innocent transfer or subterfuge by the holder of the equity, will not void the foreclosure or deprive the court of jurisdiction. The parties to the foreclosure who were served by process are bound by the proceedings.
The plaintiff has moved to re-open the judgment to cite in Charles B. Guite, by motion of September 18, 1997, upon the plaintiff learning of the transfer through the filing of the defendant Nancy L. Guite's motion to dismiss. The court grants that motion.
The said Charles B. Guite, Jr. has not himself moved to be made a party. It is of course highly unlikely that he, the holder of the title, the equity, would have any interest in redeeming a $40,000 property by redeeming though payment of $119,258.38. Although this court questions whether this defendant has standing to assert what is essentially the claim of the holder of the equity Charles B. Guite, Jr., bearing in mind that this defendant has no right title or interest in and to the equity in the property, yet the provisions of General Statutes § 49-30
provides for the complete remedy concerning failure to name and serve Charles B. Guite.
As to this foreclosure action the defendant has utterly failed to demonstrate that "there is a substantial likelihood that the result of a new (foreclosure) trial will be different.Billington v. Billington, supra, p. 47. Here again the defendant has failed to satisfy any of the four criteria of Billington v.Billington, supra. CT Page 11363
The motion of the defendant Nancy L. Guite to open up the judgment entered in this matter on February 19, 1997 is denied.
The defendant, in her supplementary motion, states "Upon reopening of the judgment, the defendant Guite is fully prepared to defend herself in this action and to contest the allegations of the complaint, which was denied her in the original action." General Statutes § 52-212, captioned "Reopening judgment upon default or nonsuit" states: "(b) the complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the defendant failed to appear." Practice Book § 377 mirrors the language of the statute. The only affidavit, dated July 10, 1997, submitted with the motion is from a Ms. McEwen, identified as "I am a legal advocate with the Connecticut Legal Rights Project, Inc. stating her opinion that the defendant lacked the mental capacity to defend herself in this action and this condition has existed for a long period of time." As aforesaid, that proposition is not a defense to the plaintiff's cause of action, either as concerns the underlying judgment or the foreclosure action.
The court denies the motion to open up the foreclosure judgment or the 1979 judgment which resulted in the judgment lien forming the basis for the foreclosure judgment
L. Paul Sullivan